Municipal Court of the City of Toledo.

STATE OF OHIO V. SAMUEL H. LUBELL.

Decided April 23, 1930.

*Dudley F. Smith,* assistant law director, for the State.
*Sholto Douglas* for the defendant.

DONOVAN, J.

The defendant in this case was charged with a violation of Section 13194 of the General Code of Ohio (O. L., 103, page 43) entitled

*"An Act to Provide against Fraudulent Advertising.* It was charged in the affidavit that the defendant 'unlawfully, with intent to sell * * * merchandise * * * to-wit, radio receiving sets, did * * * cause to be * * * published * * * in * * * the Toledo *News-Bee,* an advertisement, which * * * contained assertions, representations and statements of fact which were untrue and deceptive in this, to-wit * * * "$25 allowance on your old radio or phonograph. Kennedy's Radio Clearance. 7-tube A. C. radio. Just imagine! 7-tube radio, cabinet, speaker, tubes, all complete for only $49, with your old radio or phonograph traded in. Come in, we will demonstrate one to you gladly. $49. Philco, Sparton, Lyric, Acme, Crosley, Steinite. No interest or carrying charges," which said assertions representations and statements of fact were untrue and deceptive in that no Philco radio receiving set was for sale for $49 with an old phonograph traded in * * *."

This cause came on for trial to a jury in the Municipal Court of the city of Toledo. A verdict of guilty was returned by the jury, and the defendant, by his counsel, filed a motion for a new trial according to law. The arguments and briefs of opposing counsel will be considered here.

Section 13194 of the General Code reads as follows:

"Whoever, with intent to sell, or in any wise dispose of merchandise, securities, service or anything offered by him, directly or indirectly, to the public for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or an interest therein, causes directly or indirectly to be made, published disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, hand-bill, poster, bill, circular, pamphlet or letter, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, which advertisement contains any assertion, representation or statement of fact which is untrue, or deceptive, shall be guilty of a misdemeanor and on conviction thereof, shall be punished by a fine of not less than ten dollars nor more than one hundred dollars or by imprisonment in the county jail not exceeding twenty days or by both said fine and imprisonment."

Counsel for the defendant contends that no criminal act was committed by his client because, as shown by the evidence adduced at the trial, he had originally submitted certain advertising copy in rough draft to the *News-Bee* for publication, which was different from the advertisement that was published, and that the defendant, upon receipt of final proof of copy on the morning of the day of publication, called the *News-Bee* by telephone and ordered a correction or change to be made in the form, but the correction or change was not made as ordered, with the result that the incorrect advertisement was published; that "It is not contended that the defendant directly caused the advertisement to be published, so it remains to be determined whether the defendant was the indirect cause of the publication."

In brief the defendant, Lubell, is charged with having caused to be published, an advertisement which contained *assertions, representations and statements of fact* which were untrue and deceptive. Testimony showed that the defendant, on the morning of the day of publication, as was his custom, and within only thirty minutes before publication of the first edition of the *News-Bee* on that date, ordered by telephone, a certain correction or change to be made in the advertisement and that said correction or change was not made. It is important to note the *nature* of the correction or change so ordered, to-wit, *the defendant ordered a line or rule to be inserted.* There was no testimony introduced to show that such a line or rule, if it had been inserted immediately below the price of $49, and immediately above a certain list of names of well known makes of radios appearing in the advertisement, as indicated at the trial, would have effected a complete separation of this list of names from the remaining portion of the advertisement. Unless a complete separation was made, to the extent of setting this list of names *distinctly apart,* the existence of such a line or rule would not change the truthfulness or untruthfulness of said assertions, representations and statements of fact, all of which must be considered together.

Whether the advertisement which was published was the one which the defendant intended to be published, or whether the defendant committed the act as charged, were properly questions of fact to be determined by the jury. Strictly speaking, the motive or intent of the defendant or whether he had any particular motive, is a matter peculiarly within the knowledge of the defendant himself, and the state could not, and under this statute should not, be required to prove what his intention was. All of the testimony relative to the line or rule was before the jury. The court cannot say what if any portion of the testimony was disbelieved. The jury were the sole judges of the credibility of any of the witnesses. The jury returned a verdict of guilty.

In the enactment of this statute, it was the evident pur-

pose of the Legislature to protect the public against the harmful consequences of untrue and deceptive advertising of whatever kind or nature, and that its purpose might not be defeated, to require the one who offers goods for sale to the public through the medium of advertising, to see at his peril that his advertising is truthfully stated and free from deception. Modern business, in some lines, is prone to haste and carelessness in the preparation of advertising copy. Thus a large percentage of errors appearing in advertisements may be made without any intent to deceive, but if an advertisement on its face is deceptive, the effect on the readers of the advertisement is the same regardless of whether the error is unintentional or deliberately designed to deceive. The court will not say that this reasoning would always govern, as where the context of an advertisement indicates obviously and clearly that a typographical error was committed by the printer or publisher, or where a *material change* in the published advertisement had been made by the printer or publisher without the knowledge of the advertiser, said change thereby rendering untrue or deceptive any assertion, representation or statement of fact contained therein.

The intent of the statute must be broadly interpreted. As the court well said in *State* v. *Schaengold,* 13 O. L. R., 134:

"The purpose of the act in question in this case is indicated by its title. It is an act to provide against fraudulent advertising. The act was intended for the protection of the public; it was not enacted because of any assumption of turpitude on the part of the seller. * * *"

Also, at page 133 the court said:

"This law in question does not single out any particular class of advertisers, but applies generally to all advertisers. The evil aimed at is the possibility of alluring or enticing an unsuspecting public into the merchant's place of business, who being unfamiliar with the quality of the goods, solely relying on the truth of the advertisement, become easy victims of an unscrupulous merchant. * * *"

The practice of advertising goods for sale at attractive

prices when in fact the goods are not for sale except at higher prices, as in the case at bar, is an evil to be condemned.

This statute imposes no hardship on the advertiser. On the contrary, it serves as an aid to legitimate business. If the advertiser complies strictly with its provisions, great benefits will accrue to him through increased public confidence. If he takes a reasonable amount of time necessary for proper preparation, and if under the circumstances, he exercises ordinary and reasonable care in checking proofs which are customarily supplied by the publisher or printer before publication, he may easily avoid not only the use of statements that are untrue or deceptive, but statements that are inaccurate or ambiguous, and in the last analysis may be deceptive.

This statute is in the nature of a police regulation for the protection of the public. It should be so interpreted by the courts as to admit of its practical enforcement. Since the advertisement in the case at bar is clearly deceptive, to hold that the defendant did not cause it directly or indirectly to be published and thus permit of his escape from prosecution and punishment, would go a long way toward defeating the purpose of the law. Counsel for the defendant rests his case on the failure on the part of the *News-Bee* to insert a rule or line in the advertisement which had been ordered inserted by the defendant prior to publication. Let us assume that the rule or line had been inserted. If it had been placed, as indicated, immediately below the price of $49, would it not have served to accentuate the price without remedying the defect on which this prosecution is based? Would not the advertisement therefore have been even more deceptive?

The record discloses that the defendant is no novice in the business of advertising furniture and radios. He has been connected with the furniture business sixteen years and has had charge of the advertising of the Kennedy Furniture Company for four and one half years. In fact he has been manager of the company for four and one half years. Among his duties was the preparation of ad-

vertisements of the company for publication in newspapers, that is to say, he originated the advertisements and released them to the newspapers for publication. On occasion, he delegated certain details of preparation and correction of proofs to newspaper representatives, known as advertising solicitors or salesmen, who thus assisted him. These were the circumstances surrounding the case at bar. Nevertheless, the defendant, Lubell, was and should be responsible for whatever the advertisement contained. Whether directly or indirectly, he was the prime cause of its publication, and the court so holds.

The defendant's motion for a new trial is therefore overruled.